FILED
SUPERIOR COURT
OF GUAM

2018 MAY 17 PM 4:14

CLERK OF COURT

By:_____

IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| JONATHAN D, MAYO,<br><br>PLAINTIFF,<br><br>vs.<br><br>KYLENE C. STARR,<br><br>DEFENDANT. | DOMESTIC CASE NO.: DM0439-16<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW<br>(Complaint for Custody) |
| IN THE MATTER OF THE<br>GUARDIANSHIP<br><br>of<br><br>K.R.C.,<br>(DOB: 05/04/2016)<br><br>MINOR,<br><br>JOAQUIN QUENGA CRUZ AND<br>DOREEN THERESE CORPUZ,<br><br>PETITIONERS,<br><br>JONATHAN D. MAYO,<br><br>RESPONDENT. | JUVENILE SPECIAL PROCEEDINGS<br>CASE NO.: JP0244-16<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW<br>(Motion to Terminate Guardianship) |

**ORIGINAL**

DM0439-16 Mayo v. Starr (Compl. for Custody)
JP0244-16 In Re Guardianship of K.R.C. (Mot. Terminate Guardianship)
FINDINGS OF FACT AND CONCLUSIONS OF LAW

Page 1 of 15

## INTRODUCTION

This matter came before the Honorable Anita A. Sukola for a Bench Trial on November 7, 8, and December 19, 2017, and January 25, 2018. Jonathan D. Mayo ("Plaintiff") was represented by Attorney Daniel S. Somerfleck. Kylene C. Starr ("Defendant"); Joaquin Quenga Cruz ("Mr. Cruz") and Doreen Therese Corpuz ("Ms. Corpuz") (Mr. Cruz and Ms. Corpuz hereinafter collectively "Petitioners" or "Guardians"); were represented by Attorney Curtis C. Van de veld. After considering the evidence and testimony presented at the Bench Trial, and the Custody Study submitted by the Bureau of Social Services Administration of the Guam Department of Public Health and Social Services ("BOSSA"), the Court issues the instant Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

By preponderance of the evidence, the Court makes the following findings of fact:

1. The Plaintiff and the Defendant met through the social networking website Facebook sometime in 2013 or 2014. Shortly thereafter they engaged in an intimate relationship.

2. Sometime during 2015, the Defendant became pregnant. The Parties separated shortly after the pregnancy began.

3. One child with the initials K.R.C. (DOB: 05/04/2016) (hereinafter "minor" or "child"), was born to the Parties.

4. After the Parties separated, Ms. Corpuz accompanied the Defendant to her pre-birth appointments. The Guardians also bore the Defendant's medical expenses during the pregnancy, and those costs associated with the birth of the minor.

5. The Plaintiff was not aware of, nor present at, the child's birth. However, the Plaintiff testified that he found out the minor was born via the social media application Instagram.

6. Approximately a week after the birth, the Plaintiff contacted the Defendant seeking visitation.

7. The Plaintiff testified that when the child was born in May of 2016, the Plaintiff also started work at DZSP 21 LLC, a federal contractor engaged in supporting military operations on Guam.

8. The Plaintiff testified that he offered to place the child under his medical insurance, but the Defendant and the Guardians declined.

9. The Plaintiff also testified that he inquired of his employer and insurance provider, whether he could name the minor as a dependent under his medical insurance policy. The Defendant was informed that he needed his son's social security number to take such action. The Plaintiff testified that he was not given the social security number, despite requesting such information from the Defendant.

10. On June 3, 2016, the Guardians filed an *ex parte* Petition for Appointment of Guardians in the Superior Court of Guam. The Petition prayed for the Court to appoint Mr. Cruz and Ms. Corpuz, K.R.C.'s maternal grandparents, Guardians over the person of the minor. The Guardians filed the Petition *pro se*.

11. The Petition stated the identity of the natural father of the minor was not known at the time. The Plaintiff was not given notice of the Guardianship, nor was the Petition served on him.

12. The Petition stated that the natural mother, Kylene Corpuz Cruz (the "Defendant") was unable to provide for the care and maintenance of K.R.C. Further, the Petition stated the basis for requesting the Guardianship was so the Petitioners could supply K.R.C. "with all his necessities of life, and [sic] including medical coverage for the said minor child." *ex parte* Pet. Appointment Guardians ¶¶ 1-5 (June 3, 2016).

13. A Consent of Natural Mother was also filed with the Court on June 3, 2016. The Defendant stated that she "gave [her] full and free consent to the Petition for Appointment of Guardians of [K.R.C.] to [her] parents." Consent of Natural Mother (June 3, 2016).

14. Finally, the Petition stated "it is in the best interest of [K.R.C.] that Petitioners be appointed as guardian [sic] for said minor, so that Petitioner's health insurance will be extended to cover the said minor child." Id at ¶ 9.

15. The Court entered an Order Appointing Guardians on June 3, 2016, which granted the Petition and appointed Mr. Cruz and Ms. Corpuz Guardians over K.R.C.

16. The Plaintiff began visiting the minor at the Defendant's and Guardians' home at least once a week from May 2016 through August 2016. The Plaintiff's mother accompanied the Plaintiff to the Defendant's and Guardian's home during some of these visits.

17. The Defendant and Guardians also brought the minor to the Plaintiff's home on certain Saturdays during the period from May 2016 through August 2016. The minor would stay at the Plaintiff's house for four to five hours during these Saturday visits.

18. The Plaintiff stated that he requested more visitation with the minor at his home because he felt uncomfortable at the Defendant's home. However, on cross-examination the Plaintiff conceded that the Defendant and the Guardians never treated him badly. The Plaintiff also conceded that there may have been reasons the Defendants and Guardians preferred visitation to occur with the mother at the minor's young age because, for example, the minor was nursing. Finally, the Plaintiff also admitted that the Guardians told him he could visit with the minor at their home any time he would like, for as long as he liked.

19. The minor was baptized in Roman Catholic tradition sometime in 2016. The Plaintiff attended the ceremony and did not object to the minor's baptism.

20. The Plaintiff filed the Complaint in this matter in August of 2016.

21. The Plaintiff ceased weekly visitation when the Complaint was filed.

22. The Plaintiff testified that he was not aware of the Guardianship over the minor until the Defendant filed her Answer in the Domestic Case.

23. In the Complaint, the Plaintiff sought confirmation that he is the natural father of the minor.

24. This Court entered an Order establishing paternity on April 10, 2017, naming the Plaintiff as the natural father of the minor.

25. This Court also ordered *pendente lite* visitation between the minor and the Plaintiff.

26. Aside from the *pendente lite* visitation ordered by the Court, the minor spends most of the time with the Defendant and the Guardians. The minor has grown particularly close to Mr.

Cruz, the Defendant's father, because he is the primary caretaker for the minor during the week.

27. The Defendant was born on September 4, 1994. She currently lives in Chalan Pago, Guam with her parents Mr. Cruz and Ms. Corpuz, her maternal grandfather, and her mother's sister.

28. She has attended the University of Guam since January of 2013.

29. On July 8, 2016, the Defendant married Cameron Starr. Mr. Starr is an active duty service member in the U.S. military, and is currently stationed in Georgia. The Defendant stated she plans to finish school in Guam, which could occur during the Fanuchånan Semester of 2018 or the Fañomnåkan Semester of 2019 depending on her course load. The Defendant testified that she plans to relocate to Georgia to be with her husband after graduating.

30. At the time of trial, the Defendant was employed at the mini mart at Naval Base, Guam on a part-time, flex-hour basis. The Defendant testified that the hours she works during the day vary, but a typical shift is six hours. The Defendant also receives financial support from her husband in the amount of Six Hundred Dollars ($600.00) per month.

31. Mr. Cruz retired from the Guam Department of Corrections. Ms. Corpuz works at the Guam Memorial Hospital. The Custody Study reported that Mr. Cruz and Ms. Corpuz have a total monthly income of Ten Thousand Three Hundred and Sixty Three Dollars ($10,363.00). After monthly expenses, the Guardians have Two Thousand Five Hundred and Thirty Dollars in disposable income.

32. The Defendant testified that her typical day is spent attending class from 8:00 a.m. to about noon. Then she goes to work at the Navy Base. When her shift ends, she goes home and helps get the minor ready for bed.

33. The Defendant and the Guardians testified that K.R.C.'s typical day starts between 8:00 a.m. and 9:00 a.m. He spends the day with Mr. Cruz, though the Defendant's maternal grandfather and aunt also help when Mr. Cruz has errands. Ms. Corpuz gets home from work between 5:00 p.m. and 6:00 p.m. and also assists with the minor.

34. The minor is usually put to bed between 7:30 p.m. and 8:30 p.m. The Defendant and the Guardians testified that the minor sleeps on a futon, with the Guardians, or with the Defendant, depending on where he is at bedtime.

35. The Defendant testified that the Guardianship should remain in effect because the Guardians help her as she cannot afford to pay every bill. She further testified that if the Guardianship benefits the child, then she does not see why she would terminate it.

36. The Defendant also testified that as K.R.C.'s mother, even with the Guardianship in place, she currently has the final say on decisions regarding the minor.

37. The Defendant conceded however, that even if the Guardianship were terminated, her parents would still assist the Defendant and the minor if necessary.

38. The Defendant testified that she wanted sole legal and physical custody because she did not want to wait for the Plaintiff if an emergency related to the minor arose.

39. The Plaintiff was born on January 29, 1994. He lives in Dededo, Guam with his father Edward, his mother Leilani, his sister Keana, and his brother Jaren.

40. The Plaintiff is currently employed at DZSP 21 LLC and his monthly gross income is Three Thousand Ninety-Nine Dollars and Twenty Cents ($3,999.20). After deducting monthly expenses, the Plaintiff's remaining disposable monthly income is One Thousand Six Hundred Two Dollars and Twenty Cents ($1602.20).

41. The Plaintiff works Monday through Friday from 7:30 a.m. to 4:30 p.m.

42. The Defendant has looked into the following arrangements for the minor's care should a custody arrangement include him having time with the minor while he is working. The Plaintiff's mother works part-time and testified that she would assist with caring for the minor if needed. Both of the Plaintiff's grandmothers told the BOSSA Social Worker they would assist with providing child care while the Plaintiff works. The Plaintiff also has access to childcare services at the Community Development Center Program at Anderson Air Force Base, Guam. The Plaintiff also testified that he has leave that he could use in the event he needed to provide childcare were the minor in his custody.

43. The Plaintiff attends church-related activities three times a week, and is a pastor's assistant. He assists with middle and high school students in a youth group, and plays instruments for the worship team.

44. The Plaintiff testified that he would make whatever changes to his schedule the Court would require for him to have more time with his son.

45. The Plaintiff also testified that at the time of trial, he was granted overnight visitation and he and the minor have developed a routine for Friday night and Saturday morning.

46. While there was testimony that the child cries when leaving the Guardian's and Defendant for visitation, the testimony indicated that the Plaintiff and the minor were strengthening their relationship during the visitation periods. The Plaintiff and the minor go to children's play areas during visitation. The Plaintiff also testified that when the minor wakes up during the night in his crib, he brings the minor to his bed and gives him a bottle which helps the minor get back to sleep. Notably, there was no testimony that any visitation with the Plaintiff had to be cut short because of the minor's behavior.

47. There was also testimony related to the minor's sensitivity to certain types of milk. The Plaintiff was giving the minor milk that may have contributed to the minor vomiting and having diarrhea. However, Ms. Corpuz testified that once she made clear to the Plaintiff that the child could only ingest certain types of milk, the minor stopped having the reactions after visitation with the Plaintiff. From this string of events the Court is only convinced the Parties could have communicated better for the sake of the child. The Court does not find that the evidence, as presented, would cause this Court to question the Plaintiff's care of the minor.

48. A Custody Study prepared by Simon Kihleng, a Social Worker with BOSSA made the following finding and recommendation: "both *parents* are found to be suitable in providing stability for the physical and *financial* welfare of the minor child . . . It is recommended that both parents . . . are given 50/50 or joint legal and physical custody of the minor child . . . ." Custody Study 20 (Jul. 14, 2017) (*emphasis added*).

## CONCLUSIONS OF LAW

In the Complaint, the Plaintiff seeks joint legal and physical custody of the minor, alleging a joint custody arrangement would be in the minor's best interest. See Compl. Paternity, Child Custody and Support in DM0439-16 § VIII (Aug. 25, 2016). The Plaintiff also seeks an Order from this Court terminating the Guardianship granted in JP0244-16, arguing the Guardianship is no longer necessary, and that he was never given notice before the Guardianship was granted. Mem. P. & A. Supp. Mot. Terminate Guardianship (Sep. 28, 2016). Thus, the Court is confronted with the issues of whether the Guardianship over the minor granted in JP0244-16 should be terminated and further, whether a joint legal and physical custody arrangement between the Parties over the minor is in the minor's best interest. Each issue is addressed separately below.

### i.    Whether the Guardianship should be terminated.

Under Guam Law, a guardian is one who is appointed to take care of the person of another. 19 G.C.A. § 9101 (2017). The Superior Court of Guam is empowered to order a guardianship over the person of a child when such an arrangement is in the best interest of the child. 19 G.C.A. § 9108(a). A guardianship over the person of a child means "the duty and authority to make important decisions in matters having a permanent effect on the life and development of the child, and to be concerned about the general welfare of the child. . . ." 19 G.C.A. § 4302(e). A guardian may be removed by the Superior Court, inter alia "when it is no longer proper that the ward should be under the guardianship." 19 G.C.A. § 9112(h). The Court is further empowered to regulate and control a guardian as is required by the scope of the guardianship. See 19 G.C.A. § 9110.

The Supreme Court of the United States has held "the interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by [the Supreme Court]." Troxel v. Granville, 530 U.S. 57, 65-72 (2000) (holding a fit custodial parent has a fundamental right under the Due Process Clause of the Fourteenth Amendment to make decisions concerning the care, custody, and control of her children). From Troxel, and several cases expanding on its holding, came the presumption that returning children

to their fit parent's care and custody is in their best interest. See e.g., <u>Tourison v. Pepper</u>, 51 A.3d 470 (Del. 2012).

Here, this Court has previously entered an order recognizing the Plaintiff as the natural father of the minor. BOSSA has also found the Plaintiff and Defendant to be suitable parents able to provide for the physical and financial welfare of the child. The Court similarly finds the Plaintiff and Defendant are suitable parents who can provide for the minor's necessities. Thus, because both the Plaintiff and Defendant are fit parents, the Court finds there is a presumption that returning the minor to the custody and care of the Plaintiff and Defendant is in the child's best interest. The presumption in favor of returning the child to the parent's custody is buttressed by the fact that the Plaintiff was not given notice of the Guardianship proceedings in JP0244-16. Additionally, because the Plaintiff has demonstrated that he can provide necessities and medical insurance for the minor, the Court finds the reason for appointing the Guardians is no longer present. Further supporting the presumption, as discussed in more detail below, Guam law recognizes a policy that *both parents* should be involved to the extent possible in the upbringing of their children. <u>See</u> <u>Flores v. Cruz</u>, 1998 Guam 30 ¶¶ 11-13. Finally, the Court finds no evidence was presented that demonstrates the Plaintiff or the Defendant is unfit, or to rebut the presumption that returning the minor to his parents' care is in the minor's best interest.

Thus, having recognized that the Plaintiff is the natural father of the minor, and that he and the Defendant are suitable parents, the Court concludes there is a presumption that returning the minor to the Plaintiff's and Defendant's legal custody, and thus terminating the Guardianship is in the child's best interest. Therefore, once the Court is satisfied that the minor is covered under the Plaintiff's medical insurance policy, the Guardianship ordered in JP0244-16 on June 3, 2016 shall terminate.

**ii.** **Whether Joint Legal and Physical Custody is in the minor's best interest.**

Having determined that custody properly lies with the minor's parents by virtue of the termination of the guardianship above, the Court now turns to issue of whether joint legal and physical custody, as sought in the Complaint, would be in the minor's best interest.

Title 19 of the Guam Code Annotated provides, in actions where custody of a minor child is at issue, the court may "make such order for the custody of such minor as may seem necessary and proper." 19 G.C.A. § 8404(a). Section 8404 further provides "[c]ustody should be awarded to either parent according to the best interest of the child." 19 G.C.A. § 8404(a)(1).

The Supreme Court of Guam has reasoned the Guam custody statutory scheme "reflects the legislature's underlying policy that whenever possible, the sanctity of family life should be preserved by the inclusion of both parents in the lives of their children." Flores, 1998 Guam 30 at ¶¶ 11-13. Thus, joint custody arrangements are preferred. See Flores, 1998 Guam 30 at ¶ 12; see also, Howerton v. Howerton, 2004 Guam 8 ¶ 14; Lanser v. Lanser, 2003 Guam 14 ¶ 12. However, the Supreme Court has made clear, the preference for joint custody "is always secondary to the best interest of the child." Flores, 1998 Guam 30 at ¶ 12.

Joint custody is comprised of legal custody and physical custody. Howerton, 2004 Guam 8 at ¶ 11 (citing Pascale v. Pascale, 660 A.2d 485, 491 (N.J.1995)). Legal custody describes "the right and obligation to make long range decisions involving education, religious training, discipline, medical care, and other matters of major significance concerning the child's life and welfare." Howerton, 2004 Guam 8 at ¶ 12 (citing Taylor v. Taylor, 508 A.2d 964, 967 (Md. App. 1986)). Thus, "[j]oint legal custody means that both parents have an equal voice in making those decisions, and neither parent's rights are superior to the other." Id.

Physical custody "means the right and obligation to provide a home for the child and to make the day-to-day decisions required during the time the child is actually with the parent having such custody." Howerton, 2004 Guam 8 at ¶ 13 (citing Taylor, A.2d at 967.). However, joint physical custody does not require that each parent have equal time with their children. See Lanser, 2003 Guam 14 at ¶ 13. Rather, joint physical custody arrangements require that "each parent get continuous physical custody for significant periods of time." Howerton, 2004 Guam 8 at ¶ 17. Thus, "substantial time, and not equal time, is all that is required under a joint physical custody plan . . . [however] equal time is preferred and should be granted to the greatest extent possible."

Id. at ¶ 19. Notwithstanding the preference for equal time, a "[c]ourt may deviate from an equal time arrangement if it is within the child's best interest." Id.

To identify a custody arrangement that aligns with the best interest of a child, courts consider a broad range of facts and circumstances. See Flores, 1998 Guam 30 at ¶ 10. The Supreme Court has listed the following factors as relevant to the child's best interest: "the child's welfare, the parents' willingness to accept visitation, the parents' fitness, the child's schooling, the parents' jobs and the child's extra-curricular activities." Howerton, 2004 Guam 8 at ¶ 25. In Howerton, the Supreme Court also cited to factors used by other courts to demonstrate the scope of the best interest inquiry, such as:

> "(1) the age, habits, mental and emotional make-up of the child and those parties competing for custody; (2) the education and experience of those seeking to raise the child; (3) their character and propensities as evidenced by their past conduct; (4) the financial and physical circumstances available in the home of each party seeking custody and the special requirements of the child; (5) the availability and extent of third-party support; (6) the associations and influences to which the child is most likely to be exposed in the alternatives afforded, both positive and negative; (7) and where is the greater likelihood of an environment for the child of love, warmth, stability, support, consistency, care and concern, and physical and spiritual nurture."

Id. at ¶ 25. (citing Bah v. Bah, 668 S.W.2d 663, 666 (Tenn. Ct. App. 1984)). Certain considerations are only relevant where there is an adverse effect on the child. See Flores, 1998 Guam 30 at ¶ 14 (reasoning "a parent's illicit sexual behavior may be relevant in a best interest inquiry, [but] in order for such behavior to be relevant to a custody determination, it must be shown to have directly affected the child in an adverse manner").

The Court will weigh the factors most relevant to this case to determine what custody arrangement is in the child's best interest. To the extent certain factors are not specifically discussed the Court finds either: no evidence was presented on said factors, the factors do not have a significant net negative or positive effect on the best interest inquiry, or the factors are simply irrelevant to the specific facts and circumstances presented by this case.

///

a. The child's welfare.

At trial there was no evidence that the child was ever in danger or intentionally harmed by either parent. The Custody Study did not make any negative findings regarding the Plaintiff's home. In fact the Study stated that the child seemed "very healthy, well-coordinated and happy" when he was observed at the Plaintiff's house. Custody Study 2 (July 14, 2017). There were similarly no negative findings regarding the Defendant's residence. Additionally, the Custody Study found both homes and both parents suitable and safe for the minor.

While there was testimony that the child reacted to certain types of milk at some time during the Plaintiff's visitation, the Court found the incident was due to a lack of effective communication between the Parties. Further, the Defendant and Ms. Corpuz testified that they were still trying to figure out what specifically was causing the minor's symptoms.

Finally, neither party, nor any member of their household has any criminal history or significant health issues that would endanger the child. Thus, given Guam law's preference for joint and equal custody, and for the reasons stated, the Court finds the child welfare factor supports a joint legal and physical custody arrangement.

b. The availability and extent of third-party support.

Both the Plaintiff and the Defendant have demonstrated significant third party support that would benefit the minor. The Defendant's parents Mr. Cruz and Ms. Corpuz were appointed guardians of the minor and have spent the last two years giving the minor everything he needs. The Defendant's grandfather and aunt similarly assisted with caring for the minor. The Custody Study recognized the family support behind the Defendant and in support of the minor. The Court would also note the significant relationship the minor has developed with Mr. Cruz and Ms. Corpuz, and particularly with Mr. Cruz, who has been the child's primary caretaker. Thus, the Court finds that the Defendant has demonstrated significant third party support for her and the minor.

The Plaintiff has similarly demonstrated significant third party support prepared to support and care for the minor should he be granted joint custody. As noted in the Custody Study, the limited visitation for the Plaintiff and the minor is already a highlight of the Plaintiff's family's

week that all the Plaintiff's family members try to take part in. Further, the Custody Study stated that the child was comfortable with the members of the Plaintiff's family. Both of the Plaintiff's grandmothers are prepared to help care for the minor should the Plaintiff be granted custody. Thus, the Court concludes the Plaintiff has also demonstrated significant third party support for himself and the minor.

Because both parties have demonstrated significant third party support for themselves and more specifically for the minor, the Court finds the third-party support factor weighs in favor of a joint custody arrangement.

   c. <u>Where is the greater likelihood of an environment for the child of love, warmth, stability, support, consistency, care and concern, and physical and spiritual nurture.</u>

Finally, both the Plaintiff and the Defendant have demonstrated that they do and will continue to provide an environment for the child of love, warmth, stability, support, consistency, care and concern, and physical and spiritual nurture. Both the Plaintiff and the Defendant testified, and told the BOSSA Social Worker, that they love their son and want the best for him. Both Parties indicated that they go to church and would encourage the minor's spiritual development. The Court is convinced that both Parties want the best for the child and love him very much. Therefore, the Court finds both Parties have shown that they intend to maintain a positive environment for the minor to continue growing and thriving. The Court finds that the minor has two equally suitable and loving parents who both have his best interests at heart. Thus, the environment for the child factor also weighs in favor of a joint custody arrangement.

Based on the three most relevant factors, the Court concludes that a joint legal and physical custody arrangement would be in the child's best interest.

<u>**CONCLUSION & ORDER**</u>

Thus, by a preponderance of evidence and for the forgoing reasons, the Court **<u>ORDERS</u>** the following:

1. Once the minor is named as a dependent/beneficiary, or as soon as the minor is otherwise covered by the Plaintiff's medical insurance policy; and dental insurance policy if the minor

DM0439-16 Mayo v. Starr (Compl. for Custody)
JP0244-16 In Re Guardianship of K.R.C. (Mot. Terminate Guardianship)
FINDINGS OF FACT AND CONCLUSIONS OF LAW

Page **13** of **15**

is currently covered under the Guardians' dental insurance policy, the Guardianship granted in JP0244-16 shall terminate.

2. Once the minor is covered as contemplated by ¶ 1 above, the Plaintiff is ordered to submit [1] an ORDER terminating the Guardianship and releasing the Guardians from their duties as Guardians over the minor, and [2] a declaration demonstrating the requirements of ¶ 1 have been met.

3. The Plaintiff and Defendant shall have **JOINT LEGAL CUSTODY** of the minor.

4. The Plaintiff and Defendant shall have **JOINT PHYSICAL CUSTODY** of the minor, subject to the following:

    i.     Custody of the minor shall be on a week-on, week-off basis. The minor shall be exchanged between the Parties on Fridays, no later than 5:30 p.m. The first exchange under this Paragraph shall occur on Friday, June 1, 2018.

    ii.    The Parties shall not disparage, interfere with, or otherwise harm the child's relationship with either parent, or the parents' partners, or family members.

    iii.   Any of the terms, dates, timelines, or other provisions of this custody arrangement may be adjusted by written mutual agreement of the parties.

    iv.   The minor shall be allowed to decide which religion he shall adopt. However, until he is capable of making that decision, he may accompany either parent and/or other family member(s) to reasonable religious activities or services. Neither parent may disparage, alienate, or otherwise attempt to influence the minor's opinion of the religion of the other parent.

    v.    Should the Plaintiff continue in his claim for Child Support, that issue is expressly preserved for determination by a Referee of the Judicial Hearings Division of the Superior Court of Guam.

    vi.   The Parties are ORDERED to support and care for the child when he is in their physical custody.

A **Status Hearing** is set for **Thursday, June 14, 2018** at **9:00 a.m.**

SO ORDERED ___MAY 1 7 2018___.

The Honorable Anita A. Sukola
Judge, Superior Court of Guam

SERVICE VIA COURT BOX

Deputy Clerk, Superior Court of Guam